On the third case we were talking this morning, it's 2-4-0-0-2-4-2. Phoenix & Associates, Inc. v. Templeton Athlete & Cross Athlete, v. Gilbert Development, LLC At out, attendance, accounts, and cross athlete. Arguing on behalf of the accounts cross athlete, Mr. David Jones. Arguing on behalf of the athlete cross athlete, Mr. James G. Thomas. Thank you. Mr. Nolan, you may proceed. Thank you. Good afternoon. May it please the court. Again, I'm David Nolan. I represent the defendant appellant, Gilbert's Development, LLC. Would you stand in front of the microphone, please? Sure. Thank you. This is an appeal following a bench trial, approximately four days, in which the trial court found in favor of the plaintiff appellee on count four of its complaint for, excuse me, quantum merit and in favor of the defendant appellant on the other counts. We are asking the courts to reverse the judgment of the trial court on that count four and the alternative vacate and reverse to the trial court for a new hearing. The standard being against the manifest weight of the evidence. There are a few instances in the argument in which the appellant is arguing that it was simply the opposite conclusion. It was apparent. However, the bulk of the damages argument, the reasonable value argument, and the appellant's argument is related to the finding of the trial court was either unreasonable, arbitrary, or that the damages were not based on the evidence. The principle of quantum merit really relies on the reasonable value of the work and materials provided. And so argument number one of the appellant focuses centrally on the fact that throughout this trial, the principal witness of the plaintiff appellee was Mr. Cannigan. Mr. Cannigan certainly had qualifications to provide him. His qualifications in putting them in the record are two different things, though, correct? Correct. Yeah, he did testify as to his educational background, his experience as an environmental professional. However, he did not enter into the record any evidence that would suggest that he was qualified to render opinions regarding the cost of the labor and services, and there was no evidence. I think the bulk of the issue here is that the presentation of the damages claim for the quantum merit simply is testimony from Mr. Cannigan that he prepared exhibits, and those exhibits were introduced and only read into the record. Looking at the exhibits themselves, and I won't necessarily go through all of them, just for example, invoice number one pertaining to certain plants that were installed landscaping at the conservancy, which is the property of the development. Labor and materials are combined into one line item on those quotes. There was no attempt at rendering an opinion by any of the witnesses that such labor or materials were fair and reasonable. The sources of the materials were not introduced, invoices, excuse me, of the materials themselves. The suppliers, not even the name of the suppliers, were introduced into the record. And so the methodology which was testified to by Mr. Cannigan is that he has an administrative assistant prepare, based on his own review of notes from that day's work. Oftentimes those notes are from employees. He may not have been the one who even did the work himself. There is, across the invoices presented by the plaintiff at trial, differences in the cost of labor. For example, you'll see references to labor being $75 an hour in certain invoices versus $45 in another, with no justification based on experience of the employee. For the same type of work? Each invoice is somewhat distinguished between the type of work. For example, I can think of the exhibit for excavation has a different labor charge for than the stormwater prevention services. Or the snowplow. The snowplow, for example, too. But even in those instances, the snowplow exhibits, maybe we could pull them up. They reference extraneous documents which were not introduced in the record. The plaintiff's exhibits at trial indicated in various places, see proposal in email dated such and such date, or as pursuant to proposal from Schroeder, the company that provided the asphalt and the paving services. But those proposals were not actually introduced, which would substantiate that those services were customary from that company. And the testimony from Schroeder severely impeached the evidence presented by the plaintiff at trial, in that the plaintiff was claiming certain mechanics liens based on sworn statements, which were in excess of $100,000 when Schroeder at trial testified that his company performed possibly in the range of $35,000 to $40,000 at the conservancy related to these issues. May I ask, what is the, does the record reveal what the last date that work was performed by the, by Phoenix that Gilbert's actually paid for? What's the last date that it was paid for? Or is that, you know, if it's in the record? I think it's to an extent contested because there were certain lien waivers that were provided based on exhibit 7 of plaintiffs, which plaintiff is asserting were unpaid despite those lien waivers. However, the court at the trial level accepted the lien waivers and reduced the judgment accordingly. So in terms of a final check, a date a check was issued, there were no financial documents presented other than one check exhibit. The number of the exhibit escapes me, but there were no financial statements despite the fact that this was a project or a relationship between these parties in which over a million dollars had been paid by the defendant to the plaintiff over the course of their relationship and their history. Based on the history, can we assume that the costs and charges were reasonable? No. To an extent, that would be plaintiff's burden to establish what those costs and services were. There is nothing in the record that establishes for the amounts that were paid, the 1 million in excess. And just to clarify, plaintiff alleging the complaint and the defendant admitted paying, I believe it's $1.2 million in services and work. But that relationship, the type of work, the nature of the work, when it occurred, how it occurred, whether it was other subcontractors that were being handled by. So too many other factors. There's too many other factors. I mean, it was not proved by the plaintiff. One case that's cited by the appellant in this matter relates to just the simple fact that an invoice alone, a cost that a charge alone is not sufficient to establish quantum merit. I would cite to Big Farmer, Inc. versus AgriData Resources, Inc., a case in which both parties presented competing understandings of how their business relationship was occurring. One was 50 cents a name. The other was 50 cents for a name that actually responded to a certain mailing. And the appellate court made emphasis on the fact that despite the fact that there was testimony about normal charges or a customary charge might be from that particular company, nothing was introduced in the record related to any kind of industry standard or an attempt at even a boilerplate opinion about reasonable value. We as attorneys, maybe it's common in certain areas. We know to say certain questions or establish certain facts, just for example, laying the foundation for a photograph that's going to be the same in almost every sense. There was no attempt to even question any of the plaintiff's witnesses. Was this a fair value? Do you have an opinion that this was a fair value of the cost or the services that were rendered?  Throughout, there's also charges related to equipment usage. There's no explanation for how the charges were detailed, for how those hours for the equipment was detailed, or if it was soil, whether or not the soil was local, or if there was any transportation costs. There certainly was an opportunity, at least, to present this evidence at trial, and it was not taken upon by the plaintiff to introduce it. A few other cases that the appellant has cited in its brief related to value, non-construction type cases, we can compare it to our own professional attorneys. Was there testimony about not only what the work the professional did, but the experience of that person, the years, the type of work, whether or not it was easy, hard, the result that was obtained. There was a summary reading of these invoices by Mr. Kanigan. However, there was no opinion that the work, at the end of the day, was completed in any manner that was successful. Just for an example of that, these stormwater, the SWPPPs, these stormwater inspections, they generate a report, and not a single report was introduced into the record, nothing that substantiated the work that was done related to these services. I'm going to move on to the second argument raised by the appellant, which was that there was no conferred benefit for Gilbert's development. And the remaining of these arguments pertain to the dates March 18, 2019 and beyond, which is the date of the email from the employee of plaintiff to the defendant indicating that services were no longer going to be rendered. There was a boiling point, and there was a disagreement about what was to be paid, not to be paid, and it was very clear from the written correspondence that the parties had a severing of their relationship. Despite that, the plaintiff is still proposing that it confer a benefit upon the defendant when the defendant introduced evidence that it hired a secondary stormwater designated person, pursuant to its HUD requirements, to inspect its conservancy. In addition to that date, there was an expectation that any services that would be worked upon after that would be gratuitous. The most significant piece of evidence at the trial level on this issue was that the plaintiff's face of the company, Mr. Kanigan, he indicated basically felt to himself to an extent that he wasn't going to allow any kind of pollutants to enter the waters. So even if he wasn't going to be paid, even if the relationship had broken down, even if they weren't being requested to be at the conservancy, he didn't want to allow pollutants into the waters that would affect either his credibility, the waters themselves, because he cares to an extent. And so he made it clear in his testimony that it would be at his cost. Finally, that the next argument, excuse me, was that the complaint itself, in terms of Cal-4 quantum merit, only alleged that there were services and damages requested related to the property owned by the defendant and the conservancy. At no point was the complaint amended to request anything outside of the conservancy, and this particularly is with respect to Exhibit 14, which is the largest of the invoices of the plaintiff for an off-site location. The final argument of the appellant has to do with the statute of limitations. In my brief, I just very candidly put this is something that was not raised in a pleading or in an argument at the trial level. However, the trial court explicitly stated in its ruling that it was hindered to an extent by the age of this case and by the availability of the evidence, the recall of the witnesses. So it would be appropriate for a just result in this case for the court to consider as to Exhibit No. 1, which is the sole damages requested by the plaintiff that fell beyond five years on the unjust enrichment claim, which is the quantum merit claim. Any questions? No, sir. The Jamison case says that the plaintiff in a quantum merit must provide a basis for assessing the defendant's damages within a fair degree of probability, but need not prove an exact amount. Right. Does that matter here? I think the question of fair probability, just all the other cases that's been cited by the appellant in the respect that when you simply tender an invoice, that does not give any kind of understanding of the actual cost contained therein. So there is no fair probability. There is no understanding about how those numbers were actually generated, other than that they were generated. And so to an extent, yes, the credibility of the witness could be evaluated, but the actual probability that those are fair figures cannot, based on what's in the record, because there was no explanation for how they were so determined, other than they were simply recorded on an invoice. Thank you. Thank you. You'll have a chance to make rebuttal. I also believe that you'll have a chance to reply to the cross-appeal. Okay. Mr. McConnell, you may proceed. Thank you, Your Honor. Your Honor, my name is James G. McConnell. I'm here representing a plaintiff appellee and cross-appellant, Phoenix & Associates, Incorporated. Let me start by saying the appellant argues that there's no evidence that there was a contract between Gilbert's Development and Phoenix. And the record is full of documents, in particular plaintiff's exhibits 4-0 and 5-0, which contain Troy Mertz's signature, Troy Mertz being the owner and the registry representative of Gilbert's Development, identifying Mr. Keenegan of Phoenix & Associates, by name and address, as the on-site representative for SWPPP for Gilbert's Development. And the citations are to the pages of the record. It's Exhibits 40 and 50, E-127 and E-30, where those signatures appear. So you contend there is a contract? There was a contract. Whether it was written or not comes to the cross-appeal issue. The reason I bring it up is I didn't see you appeal that. I mean, I have your notes. They say there was no contract. We say there was a contract. I'm sorry. I have the notice of appeal here, and you appealed. As I read it, I saw your arguments and wondered about the scope of the cross-appeal. Affirm the judgment in favor of Phoenix, vacate its dismissal of Phoenix, the trial court's dismissal, the lien count, and enter judgment on the lien with its statutory interest. When I come to the argument I cross-appeal, if you want me to make it now, I'll tell you what it is. The trial judge, Judge Serang, relying on one case, the name of it escapes me at the moment. Ronning Engineering, that under Section 7, because the lien notice said there was a written contract, that we had to produce that. The reason that's wrong is that Ronning Engineering involved a case in which there were still defendants named that were non-record or other than the actual owner, owners of interest in the premises, mortgage lenders, and other contractors. In this case, at the request of Gilbert's development, before the trial proceeded, Gilbert's development posted a bond and obtained the dismissal, by posting the bond in lieu of the property, obtained the dismissal of all of the other defendants to which the Ronning Engineering case would apply, leaving only the defendant that was actually the title holder who contracted with Phoenix. So the magic word written in the lien recording is insignificant, because Ronning Engineering doesn't apply. There were no other, there were no interest holders other than the contracting party with the plaintiff remaining as defendants in the case, as of the time that bond was filed. And throughout, and still, the bond is posted. This is not a case where anybody who wasn't involved in the contract, in this case, oral or implied, is going to be affected by the mechanics lien judgment in this case. But wasn't it really the rationale just that they had submitted in Ronning a contract with somebody else? And the court said it's strict compliance with these particulars. If you want to come under the act once you're in, it will be liberally construed. Ronning says that the Section 7 applies to defendants other than the party contracting with the plaintiff. And in my briefs, I've quoted that language from Ronning. And we filed, after Judge Serang made that ruling and requested our input, we filed a pleading, which is in the record, where we distinguished Ronning Engineering from this case based on the posting of the bond. And Judge Serang didn't respond to that. She just ruled that count 1 was dismissed. My point is, there was a contract. There was all these documents where Gilbert's Development designated Mr. Kanigan of Phoenix & Associates as its SWPPP representative. And up to the time in May of 2019, when they stopped paying Phoenix altogether, paid monthly invoices for SWPPP services to Phoenix without disputing the amounts. It was a standard monthly amount for those inspections unless there was additional reporting required. And in those cases, the additional reporting is identified separately on the invoices. So for them to come here now and say that there was no contract is contrary to the evidence. The managing member of Gilbert's Development continually and uninterruptedly signed those regulatory documents identifying Phoenix and Mr. Kanigan as its SWPPP representative. Then they purported, orally, on-site, to terminate that. But if you look at Plaintiffs' Exhibits 49 and 50, in July of 2020, there was this correspondence where Mr. Mertz said to the regulatory agency in Kane County, we've got a new guy. And the next day came back a message, Exhibit 50, from the regulatory agency in Kane County saying, no you don't, I talked to him and he said he's not the guy yet. So that's the date, not about some earlier oral date, that's the date when the SWPPP contract was terminated. And all of these invoices that are in dispute, that were entered in the record that Mr. Kanigan described, line by line, are before that date. They stopped paying in May of 19. The relationship, according to those records, 49 and 50, wasn't terminated until July of 2020. So during that period of time, and when Judge Serang... Can I ask... Go ahead. I have the same question for counsel. What's the last date? You said May 2019, they stopped paying. What was the last work date where work was performed? It would have been April of 2019. And that's in the record? No, no, no. That's the last date they paid for. They continued to work through June of 2020. Is that in the record? Yes. And those are the bills that were introduced into evidence. There were some bills where the monthly rate for SWPPP... I keep forgetting the third P. SWPPP services was increased. In her calculation of the damages she awarded to my client, Phoenix, she went back to the earlier rate. So the invoice increase is reduced in the judgment. And that's why the judgment for $113,000 and some change is less than if you total up the numbers on the invoices. Counsel, you ask in your prayer for relief that we affirm the judgment on Quantum Merowith to the tune of $113,000 plus. Correct. Then you also ask that we reverse the judgment relative to the dismissal of your mechanics lien foreclosure. That's our cost appeal. How are those two prayers consistent if Quantum Merowith is based upon the lack of a contract and the finding as a cursory or preliminary determination by the trial court, how can you claim that even though there was a finding that there was no contract, you're entitled to a foreclosure on a mechanics lien on the basis that you just argued that because there was signatures by Mr. Mertz that the Phoenix company was a representative of Gilbert's development. Your mechanics lien foreclosure is based upon a contract which the trial court preliminarily determined doesn't exist. No. The trial court determined that it wasn't, that the mechanics lien wasn't enforceable under Ronning Engineering. And that is our cost appeal. Our contention is that that finding was an error and it was based on her determination, Judge Serang's, that there was no evidence of a written contract. She relied on that one word in Section 7. You can't have it both ways in my opinion. Either there was a contract, it could have been oral, it could have been written, it could have been, you know, in an astrological prediction on a daily horoscope. But if it were, then where is it to determine whether or not the mechanics lien foreclosure was properly denied or granted? The contract is in the conduct of the parties by Mr. Mertz. The contract is in the conduct of the parties? It's an implied contract. And we have cited in our brief cases that implied construction contracts can be the basis of a mechanics lien. Except under Ronning Engineering, the lien would not be enforceable. But if it's an implied contract, as opposed to any other style, permutation, or species of contract, how can you ask that we affirm the quantum narrow it? Quantum narrow it is based upon the lack of a contract. Isn't it not? Is it not? Quantum narrow it is based upon the added value. Whether or not there's a contract. No, it's based upon the benefit that is given to the party to who is to be charged for a debt. And we showed the debt and we showed what the charges were. They never disputed the value. They, in fact, paid, as the evidence shows, a million two during the time they were paying for the services under this contract, and then they stopped and proceeded to ignore invoices, never challenged them, never said, you're charging us too much, or eventually, based on this oral agreement, they said, you've been fired, but the regulatory agency said, no, that happened in July. And so that contract continued through July and forms the basis of the mechanics lien claim. We're not asking for the damage amount that was stated in the lien document. We're asking to affirm the damage amount that was awarded, although, in our view, it was not awarded because of the mistaken reliance on Ronning Engineering on the basis of the implied contract. So we're looking for, go ahead. You're looking for interest on the $113,000 pursuant to mortgage, to mortgage. On the $113,000. Between foreclosures. Yes, and the attorney's fees, which would be awarded under a mechanics lien foreclosure. And those numbers are in our brief and in the record. We introduced the summary of the attorney fee bills. There was no contention that those numbers were unreasonable or weren't, in fact, paid, and the fact that they were paid is evidence of their reasonableness. Did the court ever make a finding as to what the implied terms of the contract were? I believe that finding comes in the fact that the judge awarded damages based on the invoices. I read her ruling. Excuse me for interrupting. I mean, she said there's no contract proof. There's no written contract. I'm telling you what her ruling said. I'm not. I'm listening. That she said there's no written contract and the terms of an oral contract are insufficient to establish it. That's what I understood her to say. That's what she said. So she found no contract. Our position. And did not give judgment on count two. And our position is that that was an error because there was plenty of evidence of the existence of an oral or implied contract by the payment of over a million dollars over the period of time before they stopped paying. And who pays a million dollars if there's no contract over a period of years? Gilbert's development. I'm not trying to be facetious. The problem I'm having is that you talk about an implied contract, and my question then is, okay, what are the terms of the implied contract? Are the terms, we will pay any invoice that you send us. Is that what the implied terms are? We will pay your customary rates that you've been charging us for monthly SWPPP inspection services. And if you show that additional SWPP services were made, we'll pay for those services. And in most of the months of the invoices that were introduced, there was nothing other than the standard rate for the weekly inspections for the period of the month, whether it's four weeks or five weeks, multiplied by the rate that's stated on the invoice. And they continued to pay those up until May. And then they stopped. So although Judge Serang said her award was based on quantum merit, we're contending that the award that she made could have been based on the implied contract and that we're entitled to the mechanics lien interest and damages on top of the $113,000. Aren't you supposed to file a post-trial motion and at least attempt to conform the pleadings to the proofs? We made that motion at the conclusion of the trial when she made this ruling that rotting engineering bar count one. So she denied that motion?  We're not bringing up something that wasn't raised in the trial court. And we responded in writing to her assertion that I know the law and rotting engineering bars your mechanics lien claim. And she refused to acknowledge that we were correct as we assert here, therefore denying our response to her post-trial assertion that her dismissal of the mechanics lien count was justified. So there's nothing about that that wasn't addressed in the record. So let me understand this. Yes. You want us to find that there was an implied contract here. Yes. And that the terms of the contract, regardless of payments, et cetera, it's good enough the amount extrapolated by the trial court for the quantum merit amount. That's correct. But because there was a contract, reinstate the liens so we get interest in attorneys' fees. Exactly. Okay. Okay. We're contending that Judge Serang arrived at the right number. We're conceding her number was correct, given the proof, but for the wrong reason. And the wrong reason was rotting engineering and written in Judge Serang's view were the magic words. And our position is rotting engineering doesn't apply and written, therefore, is meaningless. There was an implied contract. The amount that was awarded is sufficient, and interest on that amount, not the amount in the recorded lien, is appropriate, and attorneys' fees are appropriate under the Mechanics Lien Act. I had some other things I wanted to say. There is evidence in the record in the testimony of Mr. Kaniga, not only as to his qualifications, but detailed evidence, as recited in our brief, about how each invoice was prepared, whether he did the work or whether he was reviewing notes of other people who did the work. And that's sufficient proof that the charges were reasonable. No contrary evidence trying to contend that the charges were unreasonable was ever offered by the defendant other than with respect to the two challenged invoices upon which Judge Serang only entered the negotiated smaller amount in her calculation. So when there was disputes — as to the reasonableness of the charges, regardless of whether or not they are challenged. In other words, if you don't establish an appropriate basis for admission of a piece of evidence, regardless of whether someone challenges it. The invoice exhibits were introduced. They were received without objection. Right. That establishes, because there were prior invoices of over a million dollars for the same nature of services, except for two — So your position is if you submit an exhibit, and I don't object to the exhibit, I'm therefore also agreeing that what the charges on that exhibit are reasonable? Subject to the testimony with respect to each of these exhibits about how it was prepared and how that amount was arrived at, which is in the record unrefuted, except with response to the snowplow guy's dispute about what amounts he billed for snowplowing to Phoenix rather than directly to Gilbert's development. And those differences were also accounted for by Judge Serang in her computation that resulted in $113,000. So the fact that they never challenged the value numbers with any contrary evidence is some evidence that they were reasonable. With respect to the off-site services — May I ask, there's no other evidence? Mr. Koenig and his testimony in detail with respect to how the bills were prepared and what they reflect. Thank you. The off-site services, if you look at the development agreement, were required as part of the Village of Gilbert's allowance of the on-site development agreement. Phoenix agreed with the Village that it would do some off-site work. It hired Phoenix to do that work. Phoenix did the work, billed Gilbert's development for it, and didn't get paid. So while the work wasn't performed within the physical boundaries of Gilbert's development property, it was required for them to proceed with the development for Gilbert's development to pay Phoenix for that off-site work. And that was the basis of those invoices. The invoices show the work that was done, the amount that was charged. There was never any contrary evidence introduced indicating by Gilbert's development that they disputed or disagreed with the value of those services. The added value to their development property is not like, oh, we built a house or we planted a tree. The added value is the testimony at record page 201, line 4 through 204, line 21, that because of the work that Phoenix did for Gilbert's development, the number of buildable lots on the Gilbert's development property was increased from 997 up to 1197. So they got 200 more lots. Whether they sold them for a dollar, $1,000, $100,000, they got 200 more lots because Phoenix did the work. No one has ever disputed on behalf of Gilbert's development or anybody else that those lots are valueless. So whatever they are, that's the added value. It's not we built a $100,000 house or a $300,000 house. They didn't do that. They did site work, paving, excavation, remediation of wetlands, services, and other things that allowed Gilbert's development to have 200 more lots to sell. There's no dispute that 200 lots is added value. And the value added doesn't have to relate under the cases that both parties have cited to the damages that were awarded. It's just that value had to be added. And under the Mechanics Lien Act also, the requirement is that you can't get a mechanics lien for work you did that didn't add any value. So that's the value that was added. With respect to the statutes of limitations, we pointed out they never raised that in the trial court. They never raised it after the trial in front of Judge Serang. And with respect to our cross-appeal, we argue that rotting engineering was inapplicable and incorrectly applied and that we're entitled to interest and attorney's fees not on the basis of the numbers in our recorded lien, but on the basis of the numbers that Judge Serang found. And what she did was say, I'm going to give you this money, but I'm not going to give you interest and attorney's fees. And our position in the cross-appeal is that that decision based solely on I know the law and rotting engineering applies is inerrant. So what we are asking for is that the trial court's award of $113,092 in favor of Phoenix should be affirmed. We don't argue about whether the basis of that was the right legal theory or a different legal theory. We're just arguing that that's a money judgment. It's not going to be a lien against the property because there's a bond, and it should be affirmed. And that the case should be remanded to Judge Serang with instructions to award statutory interest of 10% per year, simple interest, on the $113,092 plus attorney's fees, which are in evidence with Phoenix Exhibit 51 at pages E33 through 36, of an additional $46,105.30, which amount is not subject to the 10% interest. That's just separate straight attorney's fees. The 10% interest is on $113,092, and that's our request. Counsel, you cite in your briefs that the contract may be written or oral, and you cite to authority for that. I couldn't find any authority in your brief. Maybe you can direct me to it, where it mentions implied contracts are enforceable under Section 7, because you did say during oral argument that there's authority. I'd be happy to submit it. An oral contract is what we're relying on in this case. She found that that oral contract, even though it was supported by a million and two of past payments, wasn't enough because the lien document said written. I understand your argument. The problem is that your argument isn't exactly directed to your argument before us, which is that the Mechanic Lien Act applies to implied contracts, even though they may not be written or oral. Well, our position is there was a contract, whether it was written or oral. There's no written contract in evidence. Whether you want to call an oral contract supported by the conduct of the parties over the years to the tune of a million two is an oral contract or an implied contract. It doesn't matter. If you want me to submit, I can submit authorities where the word implied is there under the Mechanic's Lien Act. Well, whose burden is it to go forward on the existence of a contract? It's our burden to show there was the existence of a contract. It's not our burden after Gilbert Development posts a bond, getting everybody else out of the case, to characterize the nature of that contract. The point, the place where the nature is supposed to be characterized under Section 7. What is the purpose of the bond? Is it to satisfy a judgment? Is it to satisfy some lottery ticket? Is it to satisfy a judgment that a trial court enters upon a written or oral contract and a contest between the parties as to what the contract may be? The bond is in the record. The purpose of the bond is as a substitute for the property, which is the subject of the Mechanic's Lien claim. So that the Mechanic's Lien claim is no longer deemed to be a cloud on the title of the property. How does that relate to whether or not you're entitled to money based upon a written or oral contract? It may moot the issue for purposes of removing a cloud on the title, but how does it relate to whether or not you're entitled to a dollar or a dime? It relates to the fact that Ronning Engineering does not apply in a case where such a bond is posted. I have no authority for that because Ronning Engineering is the only case that talks about that, that either side has cited, and in that case, there was no such bond. So I agree that at least your argument appears reasonable and rational that the trial court made an improper ruling based upon the case. Well, what does that have to do with your burden of going forward to establish the nature and extent of the contract between the parties? We showed that there was a contract through the end of June for SWPP services at the stated rates which Gilbert's Development had paid for over the years up to the tune of $1.2 million. The nature of that contract is not material either to the amount of damages or to the mechanics lien entitlement. Given the existence of the nature and extent of the contract, how can quantum merit be applied in a situation where there is a contract? Our position is that the numbers are right, but the theory is incorrect. Okay. And if you shift, we're willing to accept a shift of those numbers over to an implied contract mechanics lien act count or the straight-up contract count. Okay. And I apologize to this court for any semantic confusion in our briefs in that regard, but there was a contract. I don't think there's any basis for disputing the existence of a contract given the payment of $1.2 million and the correspondence with the regulatory agencies who said up until the end of June, the guy you claim took over earlier said no. So Phoenix and Keenegan are still the guy up until today. Okay. And actually what it said was I look forward to hearing from the new guy that he is in fact the new guy. We don't dispute that that occurred shortly after that email, and our bills end with June. Any other questions? No. No, thank you. Thank you. I believe you may have an opportunity for rebuttal. After their rebuttal, I guess I get a survey rebuttal. We may have covered every base. I will reserve my survey rebuttal time only to answer any other questions you may have. Mr. Nolan, you may proceed. Thank you. I'd like to start by addressing opposing counsel's brief, his cross appeal. It consists of a page and a half, and in terms of the citations of the record or any other evidence or argument that there was some kind of oral or otherwise an implied contract, it boils down to this one statement without citation by the opposing counsel. Quote, the conduct of Gilbert's development over the eight and a half years it was working with Phoenix on the conservancy project clearly indicates the existence of a contractual relationship between the owner. There is no reference to any terms. There is no reference to the eight-year relationship. Clearly, these $650 monthly SWPPP services, even extrapolated over eight years, will fall well short of a $1.2 million payment. So the fact that the plaintiff elected for whatever reason not to introduce what the work was prior to these disputed invoices and work doesn't demonstrate with any amount of sufficiency that there was some kind of The court in its ruling on the existence of a contract, I just want to cite to the actual location. Stated at R959960, there was no testimony the court heard about any one contract regarding the various services that the plaintiff completed at this site. There is no contract that was produced or talked about. We just know that work was done. So I think that boils down to all of the arguments that were addressed in some of the questions that this honorable court was addressing with opposing counsel, which is what are these purported terms that would even consist of a possible oral or implied contract? There are none that could be pointed to. And the scope of services ranging from landscaping to SWPPP services to the excavation and building of an external well, there simply is no concrete relationship such that the sending of a mere invoice would demonstrate that there was an implied or oral agreement. What's your response to the argument about the 200 extra lots? First, I think it would be more relevant to the unjust enrichment count. The value of those lots being increased would be the benefit retained by the defendant appellant. But the analysis and the quantum error is tailored to the services and materials provided by the party. On top of that, even if there was, it's, I mean, pure speculation of what those damages could be. There was no dollar figure associated with the increase in those lots. There was no appraisal. There was no even suggestion about what value that so we could. No MSRP? None presented. The final comment on the existence of a contract. Plaintiff alleged in the complaint the existence of a written contract. And now is suggesting that there was some kind of oral or implied contract. But again, there is no evidence on what any of those terms might be. There was a suggestion or argument raised today by opposing counsel that during the trial or possibly even during the relationship of the parties that Gilbert's development or its agents didn't object to the receipt of certain invoices. There was some competing evidence about whether or not invoices were even received. But I don't think that's important in terms of this analysis at all. Because as the appellant cited in its brief, the, and this is page 29 of the brief, the Protestant Hospital Builders Club v. Godey. I'll just cite that provision quickly. Proof that defendants made a timely objection to the monthly account statements was immaterial concerning their respective liabilities under a breach of contract and unjust enrichment. So although it wasn't a quantum error case, the unjust enrichment comparison and the equitable remedy, there was no reason or need to object. Because in an account stated claim, there's already a relationship between the parties, there's a written contract, and the basis of the figures that would be objected to or not objected to are part of the party's prior assent into coming into that agreement. Whereas in this case, there is no evidence that there was that prior assent. One, I think this is going to be my final comment before I open up to questions. Just to highlight, again, the sufficiency of the evidence or lack thereof in terms of reasonable value, I would just highlight, of course, there's 36 exhibits or there's more than 36 exhibits because there's certain exhibits that were illegible that were reintroduced. But Exhibit 14, there's a line item charge for $40,000, and the entirety of the line item in the explanation of those costs comes from that exhibit. It just says excavation building of a municipal well. It's illogical. There's no breakdown of that in extreme figure. Obviously, it's a substantial project. So even if we were to consider that there was some kind of prior relationship between the parties for some of these recurring services, the actual bulk of the damages in this case come from these significant projects in which there is no terms or evidence of the actual reasonable value or a fair probability of what that value might be. Thank you. May I ask, why is the variance in the lien fatal, in your opinion? The disagreement between being a written contract versus an oral contract? Yeah. I think overall the main fatality for that Count 1 of the complaint, the McKinnison claim, is that there was no contract proven. There were no terms whether or not they'd be written or oral. And any other argument to be raised before this Court should be deemed forfeited because as Your Honor had pointed out, the brief of the FLE, the cross-appellant, solely cites authority that states that McKinnison's may be the basis of written or oral contracts, and there is no development of an argument related to any kind of implied contract. Thank you. Any questions? I have no questions. Thank you.  Mr. McConnell, is there anything you'd like to add? One minute, unless you have questions. Whether the $113,000 damage calculation and monetary award is based on quantum merit or unjust enrichment is immaterial because unjust enrichment supports the mechanics lien award of interest and attorney's fees. And a contract... When you say supports, what do you mean by that? You mean it corroborates or is foundational? It's the finding of the trial court that that monetary sum should be awarded. The designation of what theory it should be awarded under, whether it's unjust enrichment or an implied contract or mechanics lien claim recorded and introduced in evidence and proven in a different amount. The mechanics lien cases are clear that a mistake in the number on the recorded lien claim does not make it fatally deficient. It's just up to the trial court to do the calculation, which the trial court did in this case. So to say that the semantic argument, whether it's unjust enrichment or quantum merit, doesn't affect the applicability of the interest and attorney's fees under the mechanics lien. Am I correct in my belief that unjust enrichment is based upon a relationship that is not contractual or at least not insofar as being written or oral? An unjust enrichment says they got 200 extra lots and we charged them for the work that was done, which the court evaluated as being worth $113,000. On that basis, the interest and attorney's fees under the Mechanics Lien Act are recoverable on the calculated amount that the trial judge found. That any arguing about legal terms and theories of recovery other than count one doesn't make any difference. The Mechanics Lien Act still, given the fact that Section 7 and Rodding Engineering don't invalidate the mechanics lien against the owner because there's a bond, we're entitled to the interest and attorney's fees. And we'd like the case remanded for a calculation of those amounts. Okay. Any questions? No, sir. Thank you. We will take the case under advisement. We have one more case in the fall after recess.